**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 30, 2013**

# In the Court of Appeals of Georgia

A13A0661. THE STATE v. CHAPMAN.

BARNES, Presiding Judge.

After a jury found Laquaine Darryle Chapman competent to stand trial and another jury found Chapman guilty of two counts of aggravated child molestation and one count of child molestation, the trial court, acting sua sponte, declared a mistrial in the trial of Chapman's guilt or innocence and ordered a new trial on the issue of his competency. On appeal, the State contends that the mistrial order is void because it was entered after the jury returned its verdict and that the trial court abused its discretion in ordering a new trial on the issue of Chapman's competency. For reasons that follow, we conclude that the trial court, in substance, granted a new trial as to the issue of Chapman's guilt or innocence, and that it did not abuse its discretion in doing

so, thereby mooting the issue of whether the trial court erred in granting a new trial on the issue of Chapman's competency to stand trial. Accordingly, we affirm.

The record shows that Chapman was indicted on two counts of aggravated child molestation and one count of child molestation. Chapman entered a special plea of incompetency to stand trial, and he demanded therein that the issue of his competency be resolved by a jury as set forth in OCGA § 17-7-130 (b) (2). After a jury found Chapman to be competent, another jury found him guilty on all counts in the criminal trial. At the conclusion of the criminal trial, the trial court stated, among other things, that "[j]ustice was not done in this courtroom this week," and that the "process by which we reached the decision today . . . is hanging in my craw." Approximately two weeks later, the trial court, acting sua sponte, entered contemporaneous orders granting a new trial on the issue of Chapman's competency to stand trial and declaring a mistrial on the criminal charges.

The State initially claims that the trial court's declaration of a mistrial after the return of the jury's verdict was without authority and void. We agree with the State that it was too late for the trial court to declare a mistrial after the verdict. See *State v. Sumlin*, 281 Ga. 183, 184 (1) (637 SE2d 36) (2006) (finding that trial court's grant of motion for mistrial two months after the jury entered its verdict was void, noting

2

the rule that "[o]nce the jury returns its verdict, the trial has ended and the time for granting a mistrial has passed"); *State v. Jorgensen*, 181 Ga. App. 502, 503 (353 SE2d 9) (1987) (finding that a trial court cannot grant a mistrial after verdict). However, the trial court found that it committed error in admitting a physician's testimony that Chapman had sought to exclude through a motion in limine and, therefore, "the resulting jury verdict must be set aside" and "[d]efendant is entitled to a new trial." Notwithstanding nomenclature, the trial court's order was in substance the sua sponte grant of a new trial, and we will therefore treat it as such. "Pleadings, motions, and orders are construed according to their substance and function and not merely by nomenclature." (Punctuation and footnote omitted.) *McCullers v. Harrell*, 298 Ga. App. 798, 800 (2) (681 SE2d 237) (2009). See OCGA § 5-5-40 (h) (authorizing sua sponte grant of new trial); *State v. Freeman*, 272 Ga. 813, 815 (1) (537 SE2d 92) (2000) (looking to the substance of the order, rather than nomenclature, to discern its effect).

The State further contends that if we construe the trial court's order as a grant of a new trial, the trial court's order must nevertheless be vacated because the court abused its discretion in ordering a new trial. Generally, "[t]he grant or denial of a motion for new trial is a matter within the sound discretion of the trial court[.]"

3

*Taylor v. State*, 259 Ga. App. 457, 460 (2) (576 SE2d 916) (2003). Cf. *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009) (if a grant of new trial is on special ground involving questions of law, the questions of law are reviewed de novo). The reasons cited by the trial court for requiring a new trial do not go to the general grounds, but to the erroneous admission of evidence.[1] However, the trial court's rulings on the admission or exclusion of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. See, e. g., *Holmes v. State*, 275 Ga. 853, 855 (4) (572 SE2d 569) (2002).

In its written order, the trial court found that Chapman was charged for conduct allegedly occurring in September and October 2011. In November 2011, the seven-year-old victim complained to her grandmother of a burning sensation during urination and, in connection with this complaint, she indicated that Chapman had

---

[1] In its order the trial court also references the fact that it granted Chapman a new trial on the issue of his competency to stand trial, although this, standing alone, would not be a proper reason to grant a new criminal trial on the question of guilt or innocence. Rather, Chapman would simply be entitled to a new trial on competency and if found competent, his convictions would stand. See *Baker v. State*, 250 Ga. 187, 193 (1) (297 SE2d 9) (1982); *Jones v. State*, 189 Ga. App. 232, 234 (1) (375 SE2d 648) (1988) (where defendant was entitled to a new trial on competency, "[i]f he is found competent, the convictions will stand").

sexually abused her.[2] The victim was treated with medication for her urinary tract infection.

In May 2012, the victim was again diagnosed with a urinary tract infection and given an antibiotic. She was then treated on May 22, 2012 by Dr. Duke, an OB/GYN physician, for an abscess on the child's tube or ovary. Dr. Duke testified at Chapman's trial. According to Dr. Duke, the cause of the victim's abscess was pelvic inflammatory disease, and pelvic inflammatory disease is almost always caused by prior exposure to a sexually transmitted disease. Dr. Duke performed surgery on the victim and numerous color photographs taken during the surgery were admitted into evidence and shown to the jury.

The trial court noted that the victim's grandmother testified that during a pelvic examination in November 2011 the victim's hymen was intact while Dr. Duke testified that in May 2012 her pelvic examination of the victim showed that the victim's hymen was not intact. The trial court also noted that Chapman was arrested

---

[2] The appellate record includes only portions of the trial transcript and exhibits, specifically the trial court's statements following the return of the verdict, the testimony of Dr. Angela Duke, and a DVD of the forensic interview of the victim following her outcry. The State does not show that the trial court's recitation of the evidence is incorrect. See generally *Malcolm v. State*, 263 Ga. 369, 371 (3) (434 SE2d 479) (1993) (burden is on the party asserting error to show error by the record).

in November 2011 and remained in custody through the date of trial, and that there was no evidence that Chapman had ever had a sexually transmitted disease. The trial court found Dr. Duke's testimony to be "highly indicative that the victim was sexually abused by someone other than the defendant after his arrest."

Although Chapman sought to exclude Dr. Duke's testimony, the trial court allowed the physician's testimony, predicated on the State's representation that the victim would testify that she had never been sexually molested by anyone else. The victim testified at trial, but she was not asked, and she did not testify about, whether she had been sexually molested by anyone other than Chapman. Accordingly, the trial court concluded that it erred in admitting Dr. Duke's testimony, which was "highly prejudicial to defendant without a sufficient nexus to his alleged conduct," and that the resulting jury verdict must be set aside.

The State contends that the trial court's findings are directly contrary to the evidence presented at trial. The State concedes that during her trial testimony the victim did not testify that she had not been molested by any person other than Chapman, but it asserts that the child gave such testimony in a recorded interview following her outcry, and that this interview was admitted into evidence and played for the jury. In that respect, the evidence shows that after the victim had spoken to

6

acts of molestation committed upon her by Chapman, the interviewer asked the victim "has anyone else ever done anything like this to you before," and the victim answered by shaking her head, "no." But the concern of the trial court, as expressly stated in the order, was that Dr. Duke's testimony indicated that the victim had been molested by someone other than Chapman after he had been confined in jail. The State does not show that the victim's statement following her outcry in November 2011 shows anything about what happened to the victim between the time of Chapman's arrest and her illness in May 2012.

The State further contends that Dr. Duke's testimony was probative, and that the trial court erred in finding otherwise. See *Neal v. State*, 210 Ga. App. 522, 525 (3) (436 SE2d 574) (1993) (evidence that victim had a sexually transmitted disease was evidence that she had been molested.). In this context, "[r]elevancy is determined by answering the following question: Does the evidence offered render the desired inference more probable than it would be without the evidence?" (Citation and punctuation omitted.) *Smith v. State*, 255 Ga. 685, 686 (2) (341 SE2d 451) (1986). Dr. Duke's testimony indicated that the victim's condition would typically have been caused by the introduction of infected seminal fluid via penetration, although Chapman was not charged with conduct that involved such penetration. As noted

7

above, Chapman had no access to the victim following November of 2011, was not shown to have had a sexually transmitted disease, and there was lack of testimony establishing that the victim had not been molested by anyone else. The trial court also found pertinent that while the victim's hymen had been found intact in an examination following her outcry in November of 2011, Dr. Duke's testimony showed that the victim's hymen was not intact in May of 2012. Thus, while Dr. Duke's testimony was compelling evidence that the victim had been sexually abused, it is much less probative of the question of whether Chapman was the one who had molested the victim.

The "law favors the admission of relevant evidence, no matter how slight its probative value," unless the potential for prejudice substantially outweighs it probative value. (Punctuation and footnote omitted.) *Mims v. State*, 314 Ga. App. 170, 173-174 (2) (723 SE2d 486) (2012). Here, although it cannot be said that Dr. Duke's testimony was irrelevant, the trial court could conclude that the testimony's probative value was outweighed by its tendency to "unduly arouse the jury's emotions of prejudice, hostility or sympathy." (Citation and punctuation omitted.) *Smith*, 255 Ga. at 686 (2). And in weighing the probative value of evidence against the potential for such undue prejudice, it is for the trial court to exercise its discretion in

8

determining admissibility. See *Hinton v. State*, 280 Ga. 811, 816 (4) (631 SE2d 365) (2006). We cannot say that the trial court abused its discretion in finding that Dr. Duke's testimony was "highly prejudicial to defendant without a sufficient nexus to his alleged conduct," or that it erred in granting Chapman a new trial on the ground that such material and prejudicial evidence was improperly admitted. See OCGA § 5-5-22; *Crowder v. State*, 305 Ga. App. 647, 650 (2) (700 SE2d 642) (2010) (trial court could weigh probative value of evidence against its prejudicial value in its order on motion for new trial).

The State also contends that the trial court erred in granting Chapman a new trial on the issue of his competency to stand trial. Pretermitting whether this order is appealable by the State, we conclude that the issue of Chapman's competency to stand trial at the criminal proceedings in August of 2012 is moot, and he is entitled to again raise the issue of his competency upon retrial of the criminal charges. See, e. g., *Baker*, 250 Ga. at 193 (2) (finding that, should verdict of guilty be set aside, "the appellant may again raise the issue of competency by special plea"). Accordingly, we need not address the State's claims of error as they pertain to the trial court's grant of a new trial on the issue of Chapman's competency.

*Judgment affirmed. Miller and Ray, JJ., concur.*